UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MARCIA BREVOT,

                    Plaintiff,

                  -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
JOEL I. KLEIN, Chancellor, New York City Department
of Education, MICHAEL LA FORGIA, Local
Instructional Supervisor Region 9 New York City
Department of Education, RICHARD J. CONDON,
Special Commissioner, New York City Office of the
Special Commissioner of Investigation for the New York
City School District, and MARIE ZOLFO, Senior
Investigator, New York City Office of the Special
Commissioner of Investigation for the New York City
School District,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |
|---|---|
| : | 04 Civ. 7959 (GEL)(MHD) |
| | **ECF CASE** |
| : | |
| : | COMPLAINT |
| : | **Jury Trial Demanded** |
| : | |
| : | |
| : | |
| : | |
| x | |

NATURE OF THE CASE

       1.      Dr. Marcia Brevot has had a distinguished career as a supervisor and as an innovative educator.  But, in or about June 1998, the Office of the Special Commissioner of Education for the New York City School District conducted an investigation of Dr. Brevot's performance as a principal of Eastern District Senior Academy and issued a June 1998 report accusing Dr. Brevot of academic (but not financial) dishonesty and extreme incompetence (the "Stancik Report").  Because Dr. Brevot was no an employee of the New York City Board of Education at the time the Stancik Report was issue, she was provided with no meaningful opportunity to contest the accusations in the Stancik Report and the allegations in the Stancik Report have never been tested in any fair administrative or judicial proceeding.  Nevertheless, employees of the New York City Board of Education (now Department of Education) continue

to stigmatize Dr. Brevot and continue to injure her good name and reputation by discussing the substance of the Stancik Report, as they did in May and June 2004, with individuals who are not within the employ of the Department of Education.  As a result of these discussions, plaintiff's employment with a private agency, New Visions for Public Schools, was terminated.  Under such circumstances, defendants have deprived plaintiff of her liberty interest in her good name and reputation and have foreclosed her from practicing her profession without due process of law.

2.      Moreover, officials from the Department of Education have engaged in the tortious interference with Dr. Brevot's contractual relationships and have behaved in an arbitrary and capricious manner.

3.      Dr. Brevot seeks declaratory and injunctive relief granting her a fair opportunity to contest the allegations set forth in the Stancik Report and to contest her placement on the Department of Education employee ineligible list that occurred as a result of the Stancik Report. She also seeks monetary relief to compensate her for the termination of a consulting contract with New Visions for Public Schools.

<u>JURISDICTION</u>

4.      Jurisdiction for this suit rests upon 28 U.S.C. §§ 1331, 1332 and § 1343(a)(3).

5.      Pursuant to 28 U.S.C. § 1367, plaintiff requests that this Court invoke its supplemental jurisdiction to hear claims arising under state law.

6.      Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

8.      Dr. Marcia Brevot worked for the New York City Board of Education (now Department of Education) for more than 28 years and during that time acquired a distinguished reputation as a supervisor and innovative educator.  Dr. Brevot is a resident of Bergen County, New Jersey.

9.      Defendant New York City Department of Education is a public agency that administers the New York City schools.  The New York City Department of Education maintains, through the Office of Personnel Investigation, the Department of Education Inquiry/Ineligible List.  The New York City Department of Education is a person within the meaning of 42 U.S.C. § 1983.  The New York City Department of Education maintains offices at 52 Chambers Street, New York, New York.

10.     Defendant Joel I. Klein is the Chancellor of the New York City Board of Education.  As such, he is the chief executive officer for the New York City public school system.   Defendant Klein is being sued in his official capacity as a person who, acting under color of state law, deprived plaintiff of her constitutional rights.  Defendant Klein maintains offices at 52 Chambers Street, New York, New York.

11.     Defendant Michael LaForgia is the Local Instructional Supervisor for District 9 of the New York City Department of Education.  Defendant LaForgia is being sued both in his official capacity as a person who, acting under color of state law, deprived plaintiff of her constitutional rights and in his individual capacity as a tortfeasor.  Defendant LaForgia maintains offices at 333 Seventh Avenue, New York, New York.

12.     Defendant Richard J. Condon is the Special Commissioner, New York City Office of the Special Commissioner of Investigation for the New York City School District.  The

Office of the Special Commissioner of Investigation has broad authority to investigate fraud, misconduct, conflicts of interest, and other wrongdoing within the New York City School District.  Defendant Condon is being sued both in his official capacity as a person who, acting under color of state law, deprived plaintiff of her constitutional rights and in his individual capacity as a tortfeasor.  Defendant Condon maintains offices at 80 Maiden Lane, New York, New York.

13.     Defendant Marie Zolfo is a Senior Investigator in the New York City Office of the Special Commissioner of Investigation for the New York City School District.  Defendant Zolfo is being sued both in her official capacity as a person who, acting under color of state law, deprived plaintiff of her constitutional rights and in her individual capacity as a tortfeasor.  Defendant Zolfo maintains offices at 80 Maiden Lane, New York, New York.

<u>FACTS</u>

Background

14.     Dr. Marcia Brevot worked for the New York City Board of Education (now Department of Education) for more than 28 years.  Dr. Brevot holds the following New York Certifications:  School Superintendent, School Principal [all levels], Pre-School through Grade 6, Guidance and Counseling [pre-k through grade 12], Teacher of Special Education, Teacher of Elementary School [Nursery, Kindergarten, grades 1-6].

15.     During her time working for the Board of Education, she acquired a distinguished reputation as a supervisor and innovative educator.  Between 1961 and 1978, she was employed as an elementary school teacher, school psychologist, guidance counselor, supervisor of guidance and supervisor of special education.  From 1978–1983, she was the deputy superintendent of special education in Brooklyn.  Between 1983-1989, she served as Deputy Superintendent of

4

Alternative Schools and as Acting Superintendent of Alternative Schools and Programs. From 1992-1995, she worked with School Superintendent Anthony Alvarado to create six District-based schools for grades 6-12 and she worked to develop new standards and performance-based assessment protocols for evaluating students. Between 1992-1995, she was the co-director with Deborah Meier at the Center for Collaborative Education which created 11 new schools to replace two failing high schools that were being closed by the Board of Education. In 1995, she retired as a tenured supervisor with the New York City Board of Education.

16. One year later, she was coaxed out of retirement in Florida by Steven E. Phillips, the Superintendent of Alternative High Schools and Programs for the New York City Board of Education and asked to supervise the newly formed Grand Street Campus consisting of the closure of the Eastern District Senior Academy in Brooklyn, a school that was scheduled to close in June 1998, and supervision of the development of three new schools that would replace Eastern District High School.

17. Subsequent to Dr. Brevot's service as the acting principal of the Eastern District Academy and as Director of the Grand Street Campus, the Office of the Special Commissioner of Investigation for the New York City School District conducted an examination of Dr. Brevot's performance and issued the Stancik Report in June 1998 that was extremely critical of Dr. Brevot. It accused her of academic (but not financial) dishonesty and of extreme incompetence. The Stancik Report concluded that "while the Board did not renew Brevot's contract after school year 1996-1997, it is the recommendation of this office that [the criticism set forth in the report] be considered should she ever apply for reemployment in any capacity with the Board." The Stancik Report is publicly available and posted on the Internet on the website maintained by the

Office of the Special Commissioner of Investigation at http://www.nycsci.org/reports/6-98%20Eastern%20district.PDF.

The Department of
Education "Blacklist"

18.     On the basis of the Stancik Report, on or about July 6, 1998, Dr. Brevot was

placed on the Board of Education's Inquiry/Ineligible List or "blacklist."  According to the

Department of Education, this list "red flags the names of individuals placed on the list" in the

Department of Education's Human Resources System. According to the Department of

Education, "names and reasons for placement on the list are submitted to the Monitoring Unit [of

the Office of Personnel Investigation of the Department of Education] from various offices

systemwide."  No further information is available concerning the criteria that must be satisfied

before an employee is placed on the list, the available procedures for appealing one's placement

on the list and the procedures, if any, that provide for having one's name removed from the list.

Upon information and belief, placement on the blacklist disqualifies one from any employment

by the Department of Education but does not disqualify a person from employment with an

employer that contracts with the Department of Education.

Dr. Brevot's Consultancy with
 New Visions for Public Schools

19.     Dr. Brevot had moved to Florida in or about 2001 and served until July 2003 as a

consulting Middle School Program Developer in the School District for Hillsborough County,

Florida and guidance counselor at the Horace Mann Middle School.

20.     In or about August 2003, Michael LaForgia, an Instructional Superintendent for

Region 9 of the Department of Education, asked Dr. Brevot if she would consider working as a

consultant for New Visions for Public Schools ("New Visions") in connection with New Vision's administration of the New Century High Schools Initiative.

21.     New Visions is an education reform organization that works with the public and private sectors to develop programs and policies concerning teaching and learning methodologies in an effort to raise the level of student achievement.

22.     The New Century High Schools Initiative is a program that provides New York City's students with small, specialized high schools.  Each New Century High School is intended to combine rigorous academic programs with innovative teaching, personalized learning environments and deep ties to the local community.  Each school is created through a partnership between educators and community organizations, who work together on every aspect of the school's design and operation.

23.     Three private foundations – the Bill & Melinda Gates Foundation, the Carnegie Corporation of New York, and the Open Society Institute – have provided grants totaling at least $30 million to the New Century High School initiative to transform large comprehensive high schools into multiple small schools.  New Visions is charged with managing this initiative in collaboration with the Department of Education, the United Federation of Teachers, and the Council of Supervisors and Administrators.

24.     Dr. Brevot reminded Mr. LaForgia that she was on the Department of Education blacklist, but Mr. LaForgia indicated that the employment prohibition would not apply to consulting work she would perform for New Visions.

25.     Accordingly, in September 2003, Dr. Brevot was hired as a consultant by New Visions to provide consulting services to the New Century High School Initiative project that would result in the opening of six new alternative high schools in the Department of Education's

Region 9.  The term of the consulting engagement was projected to run for 3 years and Dr.

Brevot and New Visions would enter into consulting contracts on an annual basis.  Thus, the

term of the first consulting contract began effective September 10, 2003 and was to end August

30, 2004.

26.     At New Visions, as the Director of the Office of New and Small School

Development, Dr. Brevot played many roles – as a broker, convener, facilitator, incubator,

advocate for policy change and resource provider, she successfully worked with schools, parents,

community groups and civic leaders to identify critical issues in the school system, develop ways

to address them, provide resources and evaluate and document the results so that effective

programs can be initiated citywide.  During her tenure, New Visions successfully developed six

new City High Schools in Region 9.

The Office of the Special Commissioner of Investigations'
Defamation of Dr. Brevot Resulting in Termination of Her
<u>New Visions' Consultant Contract and Loss of Employment Opportunity</u>

27.     Upon information and belief, in or about December 2003, Senior Investigator

Marie Zolfo of the Office of the Special Commissioner began an investigation of Dr. Brevot's

consulting work for New Visions.  Upon information and belief, defendant Zolfo questioned

Norman Weschler, the New Century High School Project Coach for the New York City

Department of Education Regions 5 and 9 then employed by New Visions concerning Dr.

Brevot's job duties and performance.  Upon information and belief, she also spoke with Region 9

Deputy Superintendent Roy Moskowitz  and Mr. LaForgia regarding Dr. Brevot.  Upon

information and belief, during those conversations, defendant Zolfo discussed the sum and

substance of the Stancik Report; advised them that Dr. Brevot was on the Department of

Education blacklist and asked whether they would have hired her if they had known that Dr. Brevot was on the blacklist.

28.     In or about January 2004, defendant Zolfo contacted Dr. Brevot and told her that she was in the process of preparing a report for the Commissioner Condon and the Office of the Special Commissioner of Investigation concerning Dr. Brevot's consulting work for New Visions.  Defendant Zolfo also indicated that she had spoken to the "people in Florida" about Dr. Brevot being on the Department of Education blacklist.  Defendant Zolfo then informed Dr. Brevot that she knew that Dr. Brevot had "lied" on her job application to her previous employer, the Hillsborough County School District.  Defendant Zolfo's claim that Dr. Brevot had lied in her job application to the Hillsborough County School District was itself untrue.

29.     Upon information and belief, defendant Zolfo met again in March 2004 with Mr. Weschler of New Visions and Region 9 Deputy Superintendent Roy Moskowitz and Mr. LaForgia, the Local Instructional Superintendent.  Upon information and belief, defendant Zolfo again advised them that Dr. Brevot was ineligible to work for the Department of Education.

30.     Defendant Zolfo also met again with Dr. Brevot in March 2004 and advised her that it was unclear whether the Department of Education blacklist would bar her from working for New Visions but that if Dr. Brevot wanted to have her name taken off the blacklist, a superintendent would have to "write a letter" or "make a phone call" on her behalf.

31.     Upon information and belief, defendant Zolfo issued copies of a report (the "Zolfo Report") in or about May 2004 to Mr. Weschler of New Visions and to Region 9 Deputy Superintendent Moskowitz.  Upon information and belief, that report repeated the information contained in the Stancik Report, repeated that Dr. Brevot was on the Department of Education blacklist and alleged that Dr. Brevot had "lied" on her application to the Hillsborough School

District.  Upon information and belief, the report also concluded that it was unclear whether the Department of Education blacklist would operate to bar Dr. Brevot from consulting with New Visions but defendant Zolfo urged that Dr. Brevot be terminated from her position at the New Century High School Initiative.

32.     Upon information and belief, Deputy Superintendent Moskowitz gave copies of the Zolfo Report to Superintendent Peter Heaney and Local Instructional Supervisor LaForgia in or about late May 2004.

33.     Dr. Brevot met with Mr. LaForgia on or about June 7, 2004 to discuss the plans of Region 9 and New Visions for the second year of her consulting engagement.  Mr. LaForgia advised Dr. Brevot that he and Superintendent Heaney had received a copy of the Zolfo Report and described to her what the report contained.  Mr. LaForgia indicated that Superintendent Heaney was very nervous about her working on the New Visions project and that because of all the negative information about Dr. Brevot, Superintendent Heaney would not risk his career by writing a letter to the Department of Education requesting that Dr. Brevot's name be removed from the blacklist.  Mr. LaForgia also indicated that while the Zolfo Report did not direct Region 9 or New Visions to terminate her, Region 9 would direct New Visions to terminate its consultant contract with Dr. Brevot.

34.     Two days later, on June 9, 2004, Dr. Brevot received a letter from New Visions indicating that her contract was being terminated in accord with her discussion with Mr. LaForgia.  Upon information and belief, this termination by New Visions was provoked by defendant Zolfo's intervention in Dr. Brevot's employment relationship with New Visions and defendant Zolfo's discussion, in this regard, of the content of the Stancik Report.

35.     Upon information and belief, Dr. Brevot has been and continues to be disqualified from being employed, in any capacity, by the New York City Department of Education.

First Cause of Action
[Violation of the Fourteenth Amendment/Liberty Interest]

36.     The disqualification of Dr. Brevot from serving in any further capacity in any position within the Board of Education has deprived Dr. Brevot of due process of law.  In continuing to publicize the Stancik Report and in continuing to disqualify Dr. Brevot from employment, defendants have injured Dr. Brevot's good name and reputation and foreclosed her from practicing her profession without any fair process to contest the allegations in the Stancik Report.

Second Cause of Action
[Tortious Interference with Contractual Relations]

37.     In urging New Visions to terminate Dr. Brevot's contract, defendants have engaged in tortious interference with contractual relations.

38.     The contract between New Visions and Dr. Brevot was a valid contract, in full force and effect, as of June 7, 2004.

39.     Defendants had knowledge of the contract between New Visions and Dr. Brevot and engaged in intentional acts as set forth above designed to induce a breach or disruption of that contractual relationship

40.     As a proximate result of defendants' conduct, Dr. Brevot has suffered and continues to suffer substantial losses in earnings and job experience, retirement benefits, and other employee benefits she would have received absent defendants' improper action.  As a further proximate result of the above-mentioned acts, Dr. Brevot has suffered humiliation,

mental pain and anguish.  These injuries justify an award of compensatory damages in an amount

to be determined by a jury at trial.

Third Cause of Action
[Violation of CPLR Article 78]

41.     In acting to provoke New Visions to write its June 9, 2004 letter terminating Dr.

Brevot's contract, defendants have behaved in an arbitrary and capricious manner.

42.     Plaintiff has no further channels of review available to her.

43.     No previous application has been made for the relief requested in this petition.

44.     The defendants are in violation of Section 7803(3) of the Civil Practice Law and

Rules of New York State which provides for injunctive relief where a body or officer behaves in

an "arbitrary and capricious manner."

REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

(1) Issue appropriate declaratory and injunctive relief to end defendants' defamation and
stigmatization of Dr. Brevot, including affording her the opportunity of a "name clearing
hearing" so as to obtain both the removal of her name from the Department of Education
Inquiry/Ineligible List, and the cessation of the public posting of the Stancik Report on the
New York City Internet site.

(2) Award compensatory and punitive damages in an amount to be determined by a jury at trial.

(3) Award plaintiff's attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

 (4) Grant any other relief the court deems appropriate.

Dated: October 8, 2004
     New York, New York

                                                  Respectfully submitted,

                                                  NEW YORK CIVIL LIBERTIES UNION
                                                  FOUNDATION, by

                                                _____
                                                  BETH HAROULES (BH-5797)
                                                  ARTHUR EISENBERG (AE-2012)
                                                  DONNA LIEBERMAN (DL-1268)
                                                  125 Broad Street, 17th Floor
                                                  New York, N.Y. 10004
                                                (212) 344-3005

13