```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. ..
                                                  :   04 cv 7959 (GEL)
MARCIA BREVOT,                                            ECF CASE
                                                  :
                    Plaintiff,                        Electronically
                                                  :        Filed
          -against-
                                                  :
NEW YORK CITY DEPARTMENT OF EDUCATION,
JOEL I. KLEIN, Chancellor, New York City of       :
Education, MICHAEL LA FORGIA, Local
Instructional Supervisor, Region 9,               :
New York City Department of Education,
RICHARD J. CONDON, Special Commissioner,          :
New York City Office of the Special
Commissioner of Investigation for the             :
New York City School District, and
MARIE ZOLFO, Senior Investigator, New York        :
City Office of the Special Commissioner of
Investigation for the New York City School        :
District,
                                                  :
                    Defendants.
                                                  :
.. .. .. .. .. .. .. .. .. .. .. .. .. .. ..
```

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . .  ii

ARGUMENT:

POINT I      THE ALLEGATIONS WHICH RESULTED FROM THE 2004 SCI
             INVESTIGATION WERE STIGMATIZING TO PLAINTIFF  . . .   1

POINT II     PLAINTIFF'S CAUSE OF ACTION IS NOT BARRED
             BY THE STATUTE OF LIMITATIONS . . . . . . . . . . .  3

POINT III    THE STIGAMTIZING ALLEGATIONS WERE MADE PUBLIC . . .  6

POINT IV     PLAINTIFF IS ENTITLED TO A NAME CLEARING
             HEARING BECAUSE SHE WAS DEPRIVED OF A LIBERTY
             INTEREST BY THE GOVERNMENT  . . . . . . . . . . . .  9

POINT V      IF PLAINTIFF PREVAILS IN THE NAME CLEARING
             HEARING SHE IS ENTITLED TO DAMAGES FROM THE
             DEPARTMENT OF EDUCATION AS WELL AS SEVERAL OF THE
             INDIVIDUAL DEFENDANTS . . . . . . . . . . . . . . . 12

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . .  16

**TABLE OF AUTHORITIES**

Cases                                                                   Page

Brandt v. Board of Coop. Educ. Servs.,
820 F.2d 41 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . 7

Burtnieks v. City of New York, 716 F.2d 982 (2d Cir. 1983) . 12

Chaloux v. Killeen, 886 F.2d 247 (9th Cir. 1989) . . . . . . 10

City of St. Louis v. Paprotnik, 485 U.S. 112 (1988) . . . . . 14

Doe v. U.S. Dept. of Justice, 753 F.2d 1092 (D.C. Cir. 1985) . 8

Donato v. Plainview-Old Bethpage Central School District,
96 F.3d 623 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . 2, 6

Fedrizzi v. Washingtonville Cent. Sch. Dist.,
611 N.Y.S. 2d 584 (2d Dept. 1994) . . . . . . . . . . . . . . . . 6

Firth v. New York, 98 N.Y.2d 365 (2002) . . . . . . . . . . . 4, 5

Hudson v. Palmer, 468 U.S. 517 (1984) . . . . . . . . . . . . . 10

Jeffes v. Barnes, 208 F.3d 49 (2d Cir. 2000) . . . . . . 14, 15

Jett v. Dallas Independent School District,
491 U.S. 701 (1989) . . . . . . . . . . . . . . . . . . . . . . 15

Los Angeles Police Protective League v. Gates,
995 F.2d 1469 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . 9

McMillan v. Monroe County, Ala., 520 U.S. 781, 785 (1997) . . 15

Monell v. Department of Social Services
of the City of New York, 436 U.S. 658 (1978) . . . . . . . . 9, 14

Nobby Lobby, Inc. V. City of Dallas,
767 F.Supp. 801 (N.D.Tex. 1991) . . . . . . . . . . . . . . . . 10

Owen v. City of Independence, Mo., 445 U.S. 622 (1980) . . . 13

Parratt v. Taylor, 451 U.S. 527 (1981) . . . . . . . . . . . 10

Pembaur v. City of Cincinatti, 475 U.S. 469 (1986) . . . . . 15

Pruiss v. Bosse, 912 F.Supp. 104 (S.D.N.Y. 1996) . . . . . . . 5

Santiago v. Mills, 774 F.Supp. 775 (W.D.N.Y. 1991) . . . . . 10

Swinton v. Safir, 93 N.Y.2d 758 (1999) . . . . . . . . . . . . 7

Valmonte v. Bane, 18 F.3d 992 (2d Cir. 1994) . . . . . . . 2, 7

Van-Go Transp. Co. v. New York City Bd. of Education,
971 F.Supp. 90 (E.D.N.Y. 1997) . . . . . . . . . . . . . . . . 6

Velez v. Levy, 401 F.3d 75 (2d Cir. 2005) . . . . . . . . . . 14

Wisconsin v. Constantineau, 400 U.S. 433 (1971) . . . . . . . 12

Zinermon v. Burch, 494 U.S. 113 (1990) . . . . . . . . . . . 10

**ARGUMENT**

**I.   THE ALLEGATIONS WHICH RESULTED FROM THE 2004 SCI INVESTIGATION WERE STIGMATIZING TO PLAINTIFF.**

Defendants assert that the statements in the April 22, 2004 SCI letter/report of its investigation of Plaintiff were not stigmatizing and therefore implicate no liberty interest of Plaintiff. Defendants' Brief at 4, 18.

The letter/report reviews and restates the conclusions of the Stancik investigation and Report: Plaintiff had "instituted an alternative education program that was conducive to graduating as many students as possible," "she relaxed the curriculum and restructured the system of awarding credits in a manner that made it easier for students to accumulate credits, but which ignored essential academic requirements," she "created her own exceptions to the New York State mandated Regent's Competency Tests and issued diplomas to students who would not pass these exams," she "changed [failing] grades to passing scores and awarded credits for classes that students failed," and "she went so far as to grant a diploma to an adult who was not even enrolled at the school." The letter goes on to note that Plaintiff was placed on the Department's ineligible list as a result of the findings of "misconduct" by that investigation. In addition, the letter strongly suggests that Plaintiff lied to the Hillsboro County Schools in order to prevent them from learning about the Stancik investigation and the fact that she was on the DOE ineligible

1

list. See Fogel Decl., Exhibit M.

Defendants claim that Plaintiff cannot show that any of these statements "concerned plaintiff's competence as a professional and impugned her professional reputation" (Defendants' Brief at 4) flies in the face of reality.  Not only do the allegations "denigrate [Dr. Brevot's] competence as a professional," they "impugn [her] professional reputation in such a fashion as to effectively put a significant roadblock in [her] continued ability to practice . . . her profession." Donato v. Plainview-Old Bethpage Central School District, 96 F.3d 623, 630-31 (2d Cir. 1996). See also Valmonte v. Bane, 18 F.3d 992, 1001 (2d Cir. 1994)("places a tangible burden on her employment prospects").  Indeed, these allegations were sufficient to motivate the Regional Superintendent to direct that Dr. Brevot no longer serve as a consultant within his region and to do so without regard to Plaintiff's highly rated performance during her consultancy with New Visions.[1]  Moreover, it is obvious that New Visions, a key actor in the educational reform movement in New York City, will never hire Dr. Brevot to work on any projects which interface with the DOE.  This incident also demonstrates

---

[1] Local Instructional Superintendent LaForgia testified that Plaintiff's work was "exemplary" (Fogel Decl., Exhibit G, LaForgia Dep. 93), that he only heard "accolades about her." (Fogel Decl., Exhibit J, interview with La Forgia).  Norman Wechsler, of New Visions, testified that Dr. Brevot did "a very good job." (Fogel Decl., Exhibit F, Wechsler Dep. 36).

2

that Plaintiff is now essentially foreclosed from working for any entity which works with the New York City School System.  Thus, as noted in Plaintiff's principal Brief, she is not only prohibited from direct employment with the DOE (or as a consultant), she now finds herself effectively barred from working in any way with the New York City School system, all due to the allegations which were made and/or repeated in the April 22, 2004 letter/report.

## II. PLAINTIFF'S CAUSE OF ACTION IS NOT BARRED BY THE STATUTE OF LIMITATIONS.

Defendants maintain that Plaintiff's cause of action is based on an investigation and Report published in 1998 and is, therefore, barred by the three year statute of limitations.  Defendants' Brief at 14-16.  While Plaintiff's problems are rooted in that investigation, the continued publication and republication of the allegations of the Stancik Report and the additional allegations made in the course of the 2004 investigation along with her loss of employment gave rise to a new cause of action in 2004.

Defendants, in order to counter the continuing negative effects of maintaining the Stancik Report on the website of the Special Commissioner of Investigation, rely on state defamation law, which has held that the single publication rule applies in the context of internet publications and claims for defamation.  Defendants' Brief at 16 n.2.  Thus, according to Defendants, "the

3

statute of limitations runs from the date of the Report's initial Internet posting . . . in 1998." Id.  However, the constitutional right to liberty is neither defined nor constrained by state defamation law.[2]  State defamation law provides a compensatory remedy for past conduct; Plaintiff seeks to protect her reputation and good name for future employment purposes.

The single publication rule reflects a public policy of avoiding the exposure of publishers to "a multiplicity of actions, leading to potential harassment and excessive liability, and draining of judicial resources," as well as "reduc[ing] the possibility of hardship to plaintiffs by allowing the collection of all damages in one case commenced in a single jurisdiction." Firth v. New York, 98 N.Y.2d 365, 369-70 (2002).  This is an appropriate public policy when it comes to damage awards for defamation.  It is not logically applicable to the request for a name-clearing hearing premised on the denial of a liberty interest, for there is no danger of a multiplicity of actions.  The continued presence of the Stancik Report on the SCI website while Plaintiff was deprived of her contractual status with New Visions creates the very loss of liberty which a name-clearing

---

[2]In their principal Brief, Defendants themselves point out that a constitutional claim to a name-clearing hearing is different from a defamation action.  Thus, Defendants observe that damage to reputation alone, while sufficient for a state defamation claim, is inadequate to invoke the protections of the Fourteenth Amendment. Defendants' Brief at 8.

hearing is designed to correct and that loss took place in 2004.

In addition, under New York law, "every distinct publication of a libelous writing or slanderous statement gives rise to a separate cause of action." [citations omitted]. Pruiss v. Bosse, 912 F.Supp. 104, 106 (S.D.N.Y. 1996). See also Firth v. New York, supra. 98 N.Y.2d at 371.  "The justification for this exception to the single publication rule is that the subsequent publication is intended to and actually reaches a new audience.[citations omitted]. Id.  The key question to be addressed is whether the new publication is made "either with the intent or the result of communicating the earlier and separate defamatory information to a new audience." Id.

In this case, the material in the Stancik Report was republished in the form of oral communications as well as written ones.  Some of the key actors in this case were unaware of the Stancik Report and of its allegations against Dr. Brevot as well as the fact that Plaintiff was on the ineligible list as a result of "misconduct."  Neither Mr. LaForgia, Mr. Moskowitz nor Mr. Heaney of Region 9 were aware of either the Report or the determination of ineligibility, nor were New Vision's employees Norman Wechsler or Robert Hughes.  In addition, while the original Stancik Report was sent to the State Commissioner of Education in 1998, the essential elements of the Report were repeated in a letter to one of his successors along with the

5

accusation that Plaintiff had lied to the Hillsboro authorities to hide the investigation and her placement on the ineligible list because of "misconduct." It is therefore clear that the repetition of the charges from the Stancik Report, both orally and in the April 22 letter/report, was designed to and did, in fact, reach a new audience. This is critical because there is a new group of people, both within and without the DOE, who have been mislead about Plaintiff's professional competence and integrity. Most significant to Plaintiff is the roadblock this stigmatization places in her way as she attempts to practice her profession.

### III. THE STIGAMTIZING ALLEGATIONS WERE MADE PUBLIC.

Defendants claim that the allegations contained in the April 22, 2004 SCI letter was not "sufficiently public to create or threaten a stigma." Defendants' Brief at 4.[3] First, there is no threshold requirement that the stigmatizing statements must be "sufficiently" public, only that they be made public. Indeed, the Second Circuit has not required actual publication, just a reasonable likelihood of future dissemination of the stigmatizing information. See e.g. Donato, supra. 96 F.3d at 631-32 ("This

---

[3] In state defamation law, which Defendants rely on to support their statute of limitations argument, "publication occurs when the [defamatory] works are read 'by someone other than the person libeled and the person making the charges.'" Van-Go Transp. Co. v. New York City Bd. of Education, 971 F.Supp. 90, 102 (E.D.N.Y. 1997)(quoting Fedrizzi v. Washingtonville Cent. Sch. Dist., 611 N.Y.S. 2d 584, 585 (2d Dept. 1994).

requirement is 'satisfied where the stigmatizing charges are placed in the discharged employee's personnel file and are likely to be disclosed to prospective employers.' Brandt v. Board of Coop. Educ. Servs., 820 F.2d 41, 45 (2d Cir. 1987)."); Valmonte v. Bane, 18 F.3d 992 (2d Cir. 1994)("although Valamonte's presence on the Central Register [of suspected child abusers] will not be disclosed to the public, it will be disclosed to any employer statutorily required to consult the Central register)[4]; Swinton v. Safir, 93 N.Y.2d 758, 765 (1999)("where the discharged employee is seeking only expungement of stigmatizing material in a personnel file – not reinstatement or damages – a likelihood of dissemination is sufficient to trigger one's right to a departmental name-clearing hearing.").  In this case, the stigmatizing allegations were made public to New Visions and resulted in the loss of Plaintiff's employment.  Moreover, potential employers of Plaintiff are likely to check with New Visions, the last place where Plaintiff worked in her chosen profession, and are likely to learn that Plaintiff's contract was terminated early at the request of the Department of Education because of the misconduct allegations from the Stancik Report.

In addition, we have publication of the April 22, 2004

---

[4] Unlike the present case where Plaintiff is prohibited from obtaining employment with the DOE and with any contractor working with the DOE, the prospective employer of a person on the Central Register is only required to explain, in writing, why the person is being hired. Valamonte, supra. at 1001.

letter/report internally within the DOE and also sent to the New York State Department of Education. See Doe v. U.S. Dept. of Justice, 753 F.2d 1092, 1113 (D.C. Cir. 1985)("If Doe can demonstrate that the stigmatizing reasons for her discharge were disclosed to the public or were made available to prospective employers or other government personnel, she is entitled to a [name-clearing] hearing.")(emphasis supplied).  Ms. Zolfo also informed the authorities in Hillsboro that Plaintiff was on the ineligible list due to the misconduct found in the Stancik Report.  The information contained within the April 22 letter was disseminated outside of the government as well.  As a result of the 2004 SCI investigation, Norman Wechsler learned of the Stancik investigation. (Exhibit J, 3/26/04, Zolfo memo; Exhibit M).  Mr. Hughes, president of New Visions, learned of the investigation from Mr. Heaney and related to his staff that "I just spoke to Peter Heaney. He would like us to discontinue the consultancy contract with Marcia Shelton immediately. Special investigations has issued a report finding that she lowered standards to graduate a significant number of students at the high school at which she worked." (Fogel Decl., Exhibit Q). Moreover, Superintendent Heaney, in his conversation with Mr. Hughes, "did, in fact, mention a question about an accusation about regents and whether or not regents results had been tampered with." (Greenfield Decl., Exhibit E, Hughes Dep. 35.)

Thus, it is clear that the stigmatizing information reflected in the April 22, 2004 letter/report was publicly disseminated and moreover, that it was disclosed in a manner which resulted in Plaintiff's loss of current employment and future possibilities of employment in her chosen profession.

**IV. PLAINTIFF IS ENTITLED TO A NAME CLEARING HEARING BECAUSE SHE WAS DEPRIVED OF A LIBERTY INTEREST BY THE GOVERNMENT.**

Defendants assert that in addition to proving that stigmatizing allegations were made public in the course of the termination of a right or status at the behest of the government officials, Plaintiff must also establish that the deprivation she suffered was as a result of "a municipal policy or custom," citing Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978).[5] Defendants' Brief at 11. While liability in the form of damages may turn on establishing that it was caused either by a departmental policy or practice or by a governmental actor with final policymaking authority for the particular issue involved in the action, no such proof is necessary for plaintiff to secure her primary relief, a name-clearing hearing.[6] See e.g. Los Angeles Police Protective League

---

[5] Monell involved a damage action in which the Court held that municipalities are "persons" within the meaning of 42 U.S.C. § 1983, but that they cannot be held liable in damages on a theory of respondeat superior.

[6] As to the liability of defendants in damages see infra., Point V.

9

v. Gates, 995 F.2d 1469, 1472 (9th Cir. 1993)("[T]he City can be subject to prospective injunctive relief even if the constitutional violation was not the result of an 'official custom or policy'."); Chaloux v. Killeen, 886 F.2d 247, 250-51 (9th Cir. 1989)("We find no persuasive reasons for applying the Court's 'official policy or custom' requirement to suits against counties only for prospective relief."); Nobby Lobby, Inc. V. City of Dallas, 767 F.Supp. 801, 810 (N.D.Tex. 1991)("The Court can find in the case law no reason to impose an 'official policy or custom' requirement in a situation where prospective relief alone is at issue and there is no threat of municipal financial liability.");cf. Santiago v. Mills, 774 F.Supp. 775, 792-93 (W.D.N.Y. 1991)(in action for prospective injunctive relief against state officials, plaintiffs were not required to prove that defendants acted pursuant to a policy or custom).

While the Supreme Court has recognized that a post rather than pre-deprivation hearing may be adequate where the harm is "effected through random and unauthorized conduct of a state employee," Hudson v. Palmer, 468 U.S. 517, 533 (1984), even that principle is not applicable where there is no "necessity of quick action," Parratt v. Taylor, 451 U.S. 527, 539 (1981), or where there is no "impracticality of providing any predeprivation process." Id. See also Zinermon v. Burch, 494 U.S. 113, 132-38 (1990).

Here, Plaintiff's contract with New Visions was terminated at the behest of a Regional Superintendent Heaney to whom the letter/report of April 22 was referred for action.  That letter/report was sent on behalf of Defendant Richard Condon to Chancellor Klein (and others) recommending "that the continuation of Marcia Brevot Shelton's contract, which places her in a position with the Department, be reviewed in light of the information provided here."  Chancellor Klein was asked to advise the SCI of what, if any, action was taken or was contemplated regarding the recommendations made in the letter.  The letter/report sent to the Chancellor was forwarded by DOE legal counsel to Regional Superintendent Peter Heaney.  It is, therefore, apparent that the highest authority at the Department of Education thought that it was within the authority of the Regional Superintendent to act on the recommendations of the letter/report.  The Regional Superintendent then insisted "that this consultant not work with Region 9, based on the recommendations of the report." (Fogel Decl., Exhibit N, Heaney Dep. 62; Greenfield Decl., Exhibit B, Heaney Dep. 65 (It was "based on a review of this document [letter of April 22] that I was advising New Visions that we would no longer be using her as consultant in Region 9.")).  While recognizing that he didn't have the authority to tell a private party to terminate a consultancy contract, Superintendent Heaney did have the

11

authority to "object to a person working within my region, as I have done recently with other consultants." (Greenfield Decl., Exhibit B, Heaney Dep. 74). Having been authorized by virtue of his position as Regional Superintendent to determine who could work with Region 9 (and therefore who could not), the deprivation at issue here was not a random and unauthorized act by a state employee, but rather a "decision[] made by [an] official with final authority over significant matters." Burtnieks v. City of New York, 716 F.2d 982, 988 (2d Cir. 1983). Since there was no "necessity for quick action,"[7] nor was it impractical to provide a hearing prior to the termination of her contract, Plaintiff was entitled to a pre-termination hearing.

As the Supreme Court has held, "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is dong to him, notice and an opportunity to be heard are essential." Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971).

**V.  IF PLAINTIFF PREVAILS IN THE NAME CLEARING HEARING SHE IS ENTITLED TO DAMAGES FROM THE DEPARTMENT OF EDUCATION AS WELL AS SEVERAL OF THE INDIVIDUAL DEFENDANTS.**

As Plaintiff argued in her principal Brief, if she prevails on her motion and further prevails at a name-clearing hearing,

---

[7]The letter/report was issued on April 22, 2004 and Superintendent Heaney did not direct the termination of Plaintiff's contract until June 4, 2004. Up to that point "her work [was] exemplary" (Fogel Decl., Exhibit J, interview with La Forgia), and therefore there was no need for quick action.

she is entitled to damages. See Plaintiff's Brief in Support of Motion For Partial Summary Judgment, Point III at 22 et seq. Defendants' arguments regarding the lack of personal involvement of the named individuals in the deprivation of Plaintiff's liberty interest as well as the argument of the DOE that it cannot be held liable because there was no department-wide policy or practice at issue are premature and would only ripen at the time that Plaintiff became eligible for damages.[8]

In any event, Defendants' assertion that there is no evidence that any of the individual defendants engaged in any of the acts which form the basis of Plaintiff's liberty interest claim, Defendants' Brief at 10-11, is simply wrong.  Marie Zolfo, who was responsible for conducting the investigation, was also responsible for orally uttering the stigma at issue and Richard J. Condon is also responsible for disseminating the stigma through the letter/report of April 22, 2004 which was sent under

---

[8]The individual defendant's assertion of qualified immunity, which would be ripe, is misplaced as it is premised on the claim that "defendants Klein, LaForgia, Condon, and Zolfo were [not] personally involved in the alleged violation of plaintiff's liberty interest." Defendants' Brief at 19.  Although Defendants do mention the proper standard, i.e. whether the right at issue was clearly established at the time the cause of action arose, they do not, nor could they, argue that the liberty interest at stake here was not clearly defined.  Moreover, there is no qualified immunity for the DOE. Owen v. City of Independence, Mo., 445 U.S. 622 (1980)

his name and authority.[9] Compare Velez v. Levy, 401 F.3d 75, 93 (2d Cir. 2005)(investigators not liable, in part, because they were "not alleged to have uttered the 'stigma' at issue.").[10]

Because Superintendent Heaney was acting as the final decision maker in determining who could, and who could not, work as a consultant with Region 9, the Department of Education is also liable for the economic loss suffered by Plaintiff.

Liability for damages attaches to a municipal entity not only for explicit municipal policy but also to the acts of those who "may fairly be said to represent official policy." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Moreover, "the official in question need not be a municipal policy maker for all purposes. Rather, with respect to the conduct challenged, he must be 'responsible under state law for making policy in that area of the [municipality's] business,'" Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000)(emphasis added in Jeffes)(quoting City of St. Louis v. Paprotnik, 485 U.S. 112, 123 (1988), or must "have the power to make official policy on a particular issue," Id. at 57

---

[9]In addition, as the Special Commissioner of Investigation for the New York City School District, Mr. Condon may be a necessary party for ancillary relief regarding the Stancik Report and its continued presence on the Special Commissioner's website, should Plaintiff prevail at a name-clearing hearing.

[10]Plaintiff concedes that there is no evidence in the record of personal involvement by Chancellor Klein or Michael LaForgia, either in stigmatizing Plaintiff or in causing her loss of employment.

(emphasis added in Jeffes)(quoting Jett v. Dallas Independent School District, 491 U.S. 701, 737 (1989)), or must "possess[] final authority to establish municipal policy with respect to the action ordered." Id. at 57 (emphasis added in Jeffes)(quoting Pembaur v. City of Cincinatti, 475 U.S. 469, 481 (1986). "Thus, the court must 'ask whether [the] governmental official [is a] final policymaker [] for the local government in a particular area, or on [the] particular issue' involved in the action." Id. (quoting McMillan v. Monroe County, Ala., 520 U.S. 781, 785 (1997). Regional Superintendent Heaney is just such an official with respect to the particular issue involved in this action.

The New York City School System is organized into 10 regions, each headed by a Regional Superintendent. Within each region, the Regional Superintendent supervises approximately 10-12 Local Instructional Superintendents, each of whom as supervisory responsibility for about 10-12 schools and principals. See Organization of the DOE, available at www.nycenet.edu/Administration/Organization+of+the+DOE/default.htm. The Regional Superintendent has been vested with substantial autonomous authority within his region. As previously noted, the April 22 letter/report was forwarded to Superintendent Heaney precisely because it was within his authority to determine who could work as a consultant within his Region. Thus, Superintendent Heaney had "final authority to

15

establish municipal policy <u>with respect to the action ordered</u>," and the Department of Education is liable for his decision.[11]

## CONCLUSION

For the reasons expressed herein as well as those in Plaintiff's principal Brief, Defendants' motion for summary judgment should be denied.

Respectfully submitted,

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION, by


 /s/Jeffrey E. Fogel
JEFFREY E. FOGEL (JF-3948)
ARTHUR EISENBERG (AE-2012)
BETH HAROULES    (BH-5797
DONNA LIEBERMAN  (DL-1268)
125 Broad Street, 19th Floor
New York, NY 10004
(212) 344-3005

Counsel for the Plaintiff

Dated: May 22, 2006
       New York, NY

---

[11]Plaintiff concedes that her state law cause of action for tortious interference with contract should be dismissed since she did not file a Notice of Claim as required by state law.

16