UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                       :

MARCIA BREVOT,                    :

                          :

              Plaintiff,     :

                          :        04 Civ. 7959 (GEL)

       -v-                   :

                          :        **OPINION AND ORDER**

NEW YORK CITY DEPARTMENT OF     :
EDUCATION, et al.,           :

                          :

             Defendants.    :

                          :

-----------------------------------------------------------------x

Jeffrey E. Fogel, Center for Constitutional Rights,
New York, NY, and Beth Haroules, New York Civil
Liberties Union, New York, NY, <u>for plaintiff</u>.

Michael A. Cardozo, Corporation Counsel of the City
of New York, by Blanche Jayne Greenfield, Assistant
Corporation Counsel, <u>for defendants</u>.

GERARD E. LYNCH, <u>District Judge</u>:

      Plaintiff Marcia Brevot, a former employee of the New York City Department of

Education (the "Department"), seeks injunctive relief and damages pursuant to 42 U.S.C. § 1983

for defendants' alleged violation of her due process rights as provided by the Fourteenth

Amendment of the United States Constitution.  She also asks this Court to exercise supplemental

jurisdiction over her claim under Article 78 of the New York Civil Practice Law and Rules, N.Y.

C.P.L.R. §§ 7801-7806, that defendants have behaved in an arbitrary and capricious manner.[1]

Defendants – the Department, two employees of the Department (including the Chancellor), and

---

[1] Plaintiff's complaint also included a state law claim for tortious interference with
contract.  (Compl. ¶¶ 37-40.)  However, plaintiff has abandoned that claim.  (P. Opp'n Mem. 16
n.11.)

two employees of the New York City Office of the Special Commissioner of Investigation for the New York City School District – move for summary judgment on both of plaintiff's claims, arguing, *inter alia*, that plaintiff's due process claim is time-barred and that her Article 78 claim may be maintained only in state court.  Plaintiff cross-moves for partial summary judgment granting injunctive relief under her due process claim.  For the following reasons, the defendants' motion will be granted in its entirety, and plaintiff's motion will be denied.

BACKGROUND

The essential facts are mostly undisputed.  Dr. Marcia Brevot retired from the New York City School System in 1995 after 27 years of employment, during which time she held various positions ranging from guidance counselor to principal.  (Pl. Decl. ¶ 2.)  After her retirement, plaintiff was asked by the Department to serve as Acting Principal of the Eastern District Academy and as Director of the Grand Street Campus.  (Compl. ¶ 16.)  Plaintiff was given a one-year contract for this position in July 1996.  (Pl. Dep. 46.)  Upon expiration of the contract term in June 1997, her contract was not renewed.  (Id.)

In June 1998, Edward Stancik, the Special Commissioner of Investigation for the New York City School District ("SCI")[2]  issued a report ("the Stancik Report" or "the Report") – titled "How to Succeed Without Really Trying: The Alternative to Education at Eastern District Senior Academy" – accusing plaintiff of "extreme[ly] incompeten[t]" performance at the Eastern District Academy.  (Pl. Exh. C; Compl. ¶ 1.)  The Report accused plaintiff of "relax[ing] the curriculum and restructur[ing] the system of awarding credits in a manner that made it easier for

---

[2] SCI is charged with investigating "alleged acts of corruption and other criminal activity, conflicts of interest, unethical conduct and other misconduct within the school district of the City of New York."  (Def. Exh. W § 1.)

students" to graduate.  (Pl. Exh. D at 2.)  SCI also issued a press release summarizing the charges

of the Report.  (Pl. Exh. B.)[3]  The Report was provided to the State Education Department and

remains publicly available on the SCI website.  (Def. Exh. H at 34; Answer ¶ 17.)

On July 6, 1998, as a result of the Stancik Report, plaintiff was informed by letter that

she had been placed on the Department's Ineligible/Inquiry List ("the Ineligible List"), which

disqualifies individuals from future employment with the Department.  (Pl. Decl. Exh. A; Pl.

Dep. 81.)  The July 6 letter also advised plaintiff that she could schedule an "informal

conference" to discuss the matter.  (Pl. Decl. Exh. A.)  However, the conference never took

place,[4] and an employee of the Office of Appeals and Review for the Department advised

plaintiff that she "[could] no longer work for the Board of Education" as a result of her

placement on the Ineligible List.  (Pl. Dep. 71; Heaney Dep. 13.)

In September 2003, after a period of employment in Florida, plaintiff was hired by New

Visions for Public Schools as a consultant to the New Century High School Initiative project in

Region 9.  (Pl. Decl. Exh. C.)  Plaintiff was recommended for the position by Michael LaForgia,

Region 9 Local Instructional Superintendent.  (LaForgia Dep. 61-62.)  New Visions is a non-

profit organization that, in part, acts as a conduit for grants from the Carnegie, Gates, and Soros

---

[3] According to plaintiff, the charges made in the Stancik Report were widely publicized
in the media.  (Pl. Dep. 73, 75.)  Defendants do not dispute that the press release was issued to
major media outlets (Def. Exh. I), or that plaintiff held a press conference concerning the Report
which was broadcast "[e]verywhere."  (Pl. Dep. 74-75.)

[4] Plaintiff claims that either she or her attorney attempted to schedule a conference, but
was told that she could not receive one because she was technically a consultant and not an
official employee of the Department.  (Pl. Dep. 70-71.)  However, plaintiff "ha[s] nothing in
writing" to substantiate this claim.  (Id. 71.)  Plaintiff does not dispute that she never filed an
Article 78 proceeding in New York State Supreme Court, or took any other legal action, to
challenge the findings of the Stancik Report or to seek a name-clearing hearing.  (Def. Mem. 16.)

Foundations to the Department.  (Pl. Exh. E.)  Plaintiff was hired as an independent contractor "[t]o work closely with [Region 9] under their general direction, [and] to organize teams to create new schools in Region 9."  (Pl. Decl. Exh. C; Wechsler Dep. 29.)  Plaintiff's contract with New Visions was for a one year period beginning September 10, 2003, and ending August 30, 2004.  (Pl. Decl. Exh. C.)

In December 2003, SCI received information from a confidential source, alleging that plaintiff, "who was the subject of an SCI investigation in 1997 . . . and was placed on the Ineligible List as a result, is now employed" by New Visions.[5]  (Def. Exh. L.)  SCI investigator Marie E. Zolfo was assigned to investigate the matter.  (Def. Exh. M.)  Zolfo interviewed a number of people during the course of her investigation, including an employee of the Hillsboro County School District in Florida, where plaintiff had worked as a guidance counselor from July 2001 until July 2003.[6]  (Pl. Exh. L.)  Zolfo concluded that plaintiff was on the Ineligible List and was employed by New Visions, despite her awareness that she was ineligible for employment with the Department.  (Def. Exh. O.)

By letter of April 22, 2004, SCI Deputy Commissioner Regina Loughran advised the Chancellor of the Department, Joel I. Klein, that "[a]n investigation conducted by this office has substantiated that Marcia Brevot" was employed by New Visions "even though she is on the Department of Education . . . ineligible list as a result of misconduct."  (Def. Exh. P.)  The April

---

[5] By this time, Stancik had been succeeded as the Special Commissioner of Investigation by defendant Richard J. Condon.

[6] Zolfo also interviewed, *inter alia*, New Visions Senior Program Officer Norman Wechsler, Deputy Superintendent of Region 9 Roy Moskowitz, Deputy Director of the Human Resources Division of the Department Lawrence Becker, LaForgia, and plaintiff herself.  (Def. Exh. N.)

22 letter summarized the allegations of the Stancik Report and related information about plaintiff's employment by the Hillsboro School District in Florida.  (Id. 1-2)  The April 22 letter was also copied to DOE legal personnel, the Commissioner of the New York City Department of Investigation, and the Commissioner of the New York State Department of Education.[7]  (Id.)  As a result of its investigation, SCI recommended "that the continuation of Marcia Brevot['s] . . . contract . . . be reviewed in light of the information provided" in the April 22 letter.  (Id.)

The April 22 letter was forwarded to Peter Heaney, Superintendent of Region 9, who "react[ed] to it immediately, because a report from SCI is rather serious."  (Heaney Dep. 68.)  As a result of the letter and its summary of the Stancik Report, Heaney determined that plaintiff should no longer serve in Region 9.  (Id. 61-67.)  On June 3, 2004, Heaney emailed LaForgia, advising him to "notify [plaintiff] and New Visions that [the Department] wish[es] to discontinue the use of her services effective today."  (Pl. Exh. O.)  Heaney also called Robert Hughes, President of New Visions, and requested that plaintiff's consultancy be discontinued.  (Heaney Dep. 62.)  On June 14, 2004, before the completion of her contract, plaintiff was terminated from her position with New Visions.  (Pl. Exh. E.)

On October 8, 2004, plaintiff filed the complaint that initiated this action.  On April 19, 2006, following completion of discovery, defendants moved for summary judgment; plaintiff cross-moved for partial summary judgment on her injunctive relief claim on May 22, 2006.  Both motions were fully submitted as of June 19, 2006.

---

[7] SCI was required by Mayoral Executive Order to provide a copy of the April 22 letter to the Commissioner of Investigation, Chancellor, and Board of Education.  (Def. Exh. W at 3-4.)

**DISCUSSION**

I.     <u>Summary Judgment Standard</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court may only determine if there is a genuine issue to be tried, and is not to resolve disputed issues of fact. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). The court must draw all reasonable inferences and resolve all ambiguities in the nonmoving party's favor, and construe the facts in the light most favorable to the nonmoving party. <u>Id</u>. at 254-255.

The party seeking summary judgment bears the burden of showing that no genuine factual dispute exists. See <u>Cronin v. Aetna Life Ins. Co.</u>, 46 F.3d 196, 202 (2d Cir. 1995). Once the moving party has made a showing that there are no genuine issues of material fact, the burden shifts to the nonmoving party to raise triable issues of fact. <u>Anderson</u>, 477 U.S. at 250. Mere conclusory allegations will not suffice. <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir. 1985). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the nonmoving party. <u>Anderson</u>, 477 U.S. at 248.

II.    <u>Statute of Limitations</u>

Plaintiff argues that defendants have deprived her of due process of law by failing to provide her with a name-clearing hearing to challenge the findings of the Stancik Report and of SCI's subsequent investigation. (Pl. Mem. 18.) Defendants argue that plaintiff's due process claim accrued in 1998, and therefore is time-barred by the three-year statute of limitations on

6

§ 1983 claims.  Because the Court agrees that plaintiff's due process claim is time-barred,

defendants' motion for summary judgment on plaintiff's due process claim will be granted, and

plaintiff's cross-motion for partial summary judgment on that claim will be denied.

Plaintiff claims that defendants' failure to provide her with a name-clearing hearing to

challenge the stigmatizing allegations of the Stancik Report and subsequent SCI investigation

constitutes a violation of the Due Process Clause of the Fourteenth Amendment.  U.S. Const.

amend. XIV ("No State shall . . . deprive any person of life, liberty, or property, without due

process of law.").  "The Due Process Clause requires that, generally, a person must be afforded

the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or

property interest."  Patterson v. City of Utica, 370 F.3d 322, 329 (2d Cir. 2004).  Thus, to

establish that defendants violated the Due Process Clause, plaintiff must establish that

defendants' conduct deprived her of a constitutionally protected liberty.

An individual is not deprived of liberty as a result of defamation by the government

alone; a liberty interest is implicated only when the defamation is coupled with an "alter[ation]"

or "extinguish[ment]" of a "right or status."  Paul v. Davis, 424 U.S. 693, 711 (1976).  Thus, a

"serious additional harm, such as loss of employment, as a result of the defamatory remarks by a

government official" must be established before defamation may be deemed a constitutional

deprivation.  Komlosi v. N.Y. State Office of Mental Retardation and Developmental

Disabilities, 64 F.3d 810, 817 (2d Cir. 1995).  The legal standard has been referred to as the

"stigma-plus" test: a liberty interest is implicated by public defamation coupled with the

termination or loss of some legal right or status.  See, e.g., Neu v. Corcoran, 869 F.2d 662, 667

(2d Cir. 1989) ("[D]efamation . . . is not a deprivation of a liberty interest unless it occurs in the

course of dismissal or refusal to rehire the individual as a government employee.").

To satisfy the stigma-plus test, plaintiff must allege: (1) the utterance of a defamatory statement about her that "is injurious to her reputation, that is capable of being proved false, and that . . . she claims is false," and (2) "some tangible and material state-imposed burden . . . in addition to the stigmatizing statement." Doe v. Dep't of Pub. Safety ex rel. Lee, 271 F.3d 38, 47 (2d Cir. 2001), rev'd on other grounds, Conn. Dep't of Pub. Safety v. Doe, 538 U.S. 1 (2003); see also Paul, 424 U.S. at 701-702. The defamatory statement need not actually "create" an injury to plaintiff's reputation to be actionable; instead, the mere "threat[]" of such injury is sufficient to satisfy the first prong of the stigma-plus test. Velez v. Levy, 401 F.3d 75, 87 (2d Cir. 2005). See, e.g., Brandt v. Bd. of Coop. Educ. Servs., 820 F.2d 41, 43 (2d Cir. 1987) (requiring the defamatory remarks to be of the type "'that *might* seriously damage [her] standing and associations in [her] community' or that *might* impose 'on [her] a stigma or other disability that foreclose[s] [her] freedom to take advantage of other employment opportunities'"), quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 573 (1972) (emphasis added).

If plaintiff satisfies the stigma-plus test, she has been deprived of a liberty interest, and the Fourteenth Amendment prohibits such a deprivation without due process of law, ordinarily in the form of notice and an opportunity to be heard. Failure to provide such a hearing is a violation of plaintiff's right to due process. See Roth, 408 U.S. at 573 ("[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.") (citation and internal quotation marks omitted). Where due process has been denied, the appropriate remedy is a post-deprivation name-clearing hearing. Patterson, 370 F.3d at 328.

8

Plaintiff need not convince this Court that the allegations in the Stancik Report or SCI's subsequent investigation were actually false in order to establish a violation of her due process rights.  Brandt, 820 F.2d at 43-44 (noting that the goal of a name-clearing hearing is to determine the falsity of the allegations).  Thus, plaintiff argues only that defendants' failure to provide her with a hearing violated her right to due process because she has satisfied the stigma-plus test.  (See generally Pl. Mem. 12-18.)[8]  Defendants argue that plaintiff has failed to establish a due process violation because, inter alia, she has failed to show that defendants were "personal[ly] involved in the alleged constitutional deprivation," or that she was "deprived of rights pursuant to a municipal policy or custom."  (Def. Mem. 8, 11.)  However, these issues need not be reached, because plaintiff's due process claim is time-barred.

Plaintiff's due process claim is asserted against defendants pursuant to 42 U.S.C. § 1983.[9]  "[Section] 1983 provides a remedy for the deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'"  Lugar v. Edmonson Oil Co., Inc., 457 U.S. 922, 924 (1982) (citing 42 U.S.C. § 1983).  Claims under § 1983 accrue at the

---

[8] Plaintiff argues that this Court should order a name-clearing hearing immediately, and that only if she is successful in establishing the falsity of the charges in the Report would she be entitled to return to this Court to attempt to prove that she sustained compensable damages.

[9] The complaint does not specifically base plaintiff's due process claim on § 1983.  However, defendants treat plaintiff's Fourteenth Amendment claim as arising under § 1983 (Def. Mem. 14), and plaintiff does not argue otherwise.  (See also Compl. ¶ 9 ("The New York City Department of Education is a person within the meaning of 42 U.S.C. § 1983.").)  Plaintiff's due process claim is properly construed as arising under § 1983.  See Pauk v. Bd. of Trustees of City Univ. of N.Y., 654 F.2d 856, 865 (2d Cir. 1981) ("[W]hen § 1983 provides a remedy, an implied cause of action grounded on the Constitution is not available."); Turpin v. Mailet, 591 F.2d 426, 427 (2d Cir. 1979) (rejecting cause of action against municipality grounded directly on Constitution because of availability of § 1983).

time that plaintiff knows, or has reason to know, of the injury that is the basis of her action.

Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 332 (2d Cir. 1997) ("Under federal law,

which governs when claims brought under § 1983 . . . accrue, the statute of limitations begins to

run once the plaintiff knows of the injury on which the claim is based."), citing Cornwell v

Robinson, 23 F.3d 694, 703 (2d Cir. 1994).  The limitations period on § 1983 claims in New

York is three years.  See Owens v. Okure, 488 U.S. 235, 251 (1989) (applying New York's

three-year statute of limitations governing general personal injury actions to § 1983 claims).

See, e.g., Jaghory, 131 F.3d at 332 (same).

    The Stancik Report and the Department's press release were issued in 1998.  (Def. Exhs.

H, I.)  Plaintiff was placed on the Ineligible List in 1998.  (Exh. J.)  Plaintiff does not dispute that

she was aware of all of these events at the time they occurred.  Therefore, any claim based on

these events accrued in 1998, more than three years prior to plaintiff's initiation of the present

action.  Because there is a three-year statute of limitations on § 1983 claims, plaintiff cannot base

her § 1983 claim on these events.

    Plaintiff argues, however, that "the continued publication and republication of the

allegations of the Stancik Report and the additional allegations made in the course of the 2004

investigation along with her loss of employment gave rise to a new cause of action in 2004."  (Pl.

Opp'n Mem. 3.)  Thus, plaintiff argues that her § 1983 claim was timely brought because her

cause of action continues to accrue on an ongoing basis as long as the Stancik Report remains

publicly available.  Alternatively, plaintiff argues that her claim was timely brought because a

new cause of action arose in 2004 as a result of defendants' dissemination of the Report during

the course of SCI's investigation.  Plaintiff argues that this dissemination resulted in the

10

termination of her employment with New Visions, thereby giving rise to a distinct, discrete harm in 2004.  Both arguments fail.

Plaintiff's first argument is analogous to the "continuing violation doctrine," applied most often in discrimination cases.  See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998); Lucenti v. Potter, 432 F. Supp. 2d 347, 358-59 (S.D.N.Y. 2006).  Application of the continuing violation doctrine "delays the point at which the statute of limitations begins to run    . . . until the last discriminatory act in furtherance of" defendant's "continuous practice and policy of discrimination" occurs.  Jaghory, 131 F.3d at 331, quoting Cornwall v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994).  Although the continuing violation doctrine is considered most often in the context of discrimination cases, courts also have considered its application to other types of claims.  See, e.g., id. at 332 (considering the continuing violation doctrine in a § 1983 case).

The continuing violation doctrine balances the burden imposed on plaintiffs by statutes of limitations against the reality that unlawful conduct does not always occur on discrete, specific occasions.  The goal of statutes of limitations is to provide a "shelter" that protects defendants from being haled into court on "claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.  The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."  In re Becker, 407 F.3d 89, 97 (2d Cir. 2005), quoting Rothensies v. Elec. Storage Battery Co., 329 U.S. 296, 301 (1946).  The continuing violation doctrine is premised on the theory that a defendant who is accused of engaging in an "ongoing . . . polic[y] or practice[]"

of unlawful conduct does not require the "shelter" of the statute because such a claim is not "stale." See Quinn, 159 F.3d at 766 (citations and internal quotation marks omitted). See, e.g., Del. State Coll. v. Ricks, 449 U.S. 250, 256-57 (1980) ("The limitations periods . . . protect [defendants] from the burden of defending claims arising from . . . decisions *that are long past.*") (emphasis supplied). Thus, plaintiff argues that the "ongoing" public availability of the Stancik Report on the Department's website is a continued violation of her liberty interest, and so defendants should not be afforded the "shelter" provided by the statute of limitations.

Plaintiff's argument misunderstands the nature of the due process claim. The constitutional claim is that plaintiff was entitled to a hearing before the Department deprived her of liberty by taking adverse action against her while making allegations potentially damaging her deputation. That deprivation occurred in 1998, with the issuance of the Stancik Report accompanied by plaintiff's consignment to the Ineligible List. Plaintiff claims that she was entitled to a hearing before such harmful action was taken.

Plaintiff's claim was thus complete in 1998. Satisfaction of the stigma-plus test is not contingent on the *actual* consequences of the stigmatizing allegations, but on their *potential* consequences: To satisfy the stigma-plus test, plaintiff must establish that the government publicized information "that *might* seriously damage [her] standing . . . in [her] community," or that *might* impose "on [her] a stigma or other disability that foreclose[s] [her] freedom to take advantage of other employment opportunities." Roth, 408 U.S. at 573 (1972) (emphasis added). Thus, had plaintiff brought her claim in 1998, when she was placed on the Ineligible List (satisfying the "plus" element of the test), as a result of the allegedly defamatory and publicly-circulated assertions in the Stancik Report (satisfying the "stigma" element), her claim would

have been ripe for adjudication even if she had not yet suffered any actual loss of employment as a result of the Report.  Being barred from future employment by the Department of Education "extingush[ed]" a "right or status" within the meaning of Paul v. Davis.  Assuming arguendo that the allegations of the Report were potentially stigmatizing, the stigma-plus test would have been satisfied.[10]  Thus, plaintiff's claim that she should have been accorded a hearing before this action was taken, and her equitable entitlement to a name-clearing hearing, accrued in 1998.  Whether or not the continued publication of the Report constituted an ongoing defamation is immaterial, for such defamation is not in itself a deprivation of liberty.[11]  The deprivation, and

---

[10] Levine v. Morgenthau, No. 95 Civ. 8529, 1996 WL 396119 (S.D.N.Y. 1996), is instructive.  Levine was arrested in June 1991, but the charges were dropped in July.  Id. at *1. In December 1995, plaintiff brought a § 1983 action challenging a section of the New York Criminal Procedure Law that allows sealed records from criminal actions terminated in favor of the accused to be released to certain organizations and certain people, including to the prospective employer of a police officer.  Id.  Plaintiff alleged that the statute deprived her of the right to "due process of law before a deprivation of a liberty interest."  Id. at *2.  Thus, the Levine court analyzed the merits of plaintiff's claim under the Paul v. Davis stigma-plus test.  Id. at *5.

However, before discussing the merits of plaintiff's claim, the court considered defendant's argument that plaintiff's § 1983 claim was time-barred.  Defendant argued that, because plaintiff brought her suit more than three years after her 1991 arrest, her § 1983 claim was barred by the three-year statute of limitations.  Id. at *3-4.  The court found that, although "[a]t first blush, one could argue that" plaintiff's failure to allege actual dissemination to employers "indicates that plaintiff's challenge to the constitutionality . . . of the statute is not ripe, . . . [i]t was sufficient that plaintiff alleged that she intended to apply for positions which would trigger the dissemination."  Id. at 3.  The court held that "applying for employment [was] not necessary to make" plaintiff's stigma-plus claim ripe for adjudication.  Id. at *4.

[11] Plaintiff attempts to take a bite from both sides of the apple by first rejecting defendants' argument that New York's single publication rule should not apply to her claim because the claim sounds in due process rather than defamation (Pl. Opp'n Mem. 3-4), while simultaneously arguing that her claim is exempt from the statute of limitations because it falls within an exception to the single publication rule.  (Id. 5.)  As defendant correctly states, "the constitutional right to liberty is neither defined nor constrained by state defamation law."  (Id. 4.) Indeed, the stigma-plus tests rests on the premise that defamation which is actionable under state law, standing alone, is "[in]sufficient to invoke the guarantees of procedural due process."  Paul,

any attendant right to a hearing, occurred at the particular point in time, in 1998, when the defamation was accompanied by a concrete adverse governmental action.

Plaintiff's second argument does not fare any better.  Plaintiff argues that defendants violated her liberty interest again by disseminating the Report in 2004, thereby causing her to lose her job with New Visions.  According to plaintiff, the fact that the 2004 investigation exposed a "new audience" to the stigmatizing allegations of the Report "is critical" to her claim. (Pl. Opp'n Mem. 6.)  But if every exposure of stigmatizing allegations to a "new audience" gave rise to a new cause of action, then a plaintiff would have a cognizable claim every time such exposure resulted in a new harm, no matter how long ago the information was actually publicized.  This would effectively exempt every stigma-plus case from the statute of limitations imposed on § 1983 claims.  Such an effect would undermine the purpose of statutes of limitations, to protect parties from being forced to defend against claims arising from "decisions that are long past."  Ricks, 449 U.S. at 257.

Plaintiff's argument would entail the absurd consequence that she is entitled to a hearing before SCI may circulate the Report it prepared in 1998 to any Department of Education official, or remind any such official that she is on the Ineligible List.  If plaintiff was deprived of due process, that deprivation occurred when she was deprived of eligibility for employment in a defamatory manner without a hearing.  A new hearing is not required whenever the consequences of the original state action are felt.

The Department's placement of plaintiff on the Ineligible List, which stripped plaintiff of a "legal right or status," and SCI's publication of the Stancik Report, which provided the

_____

424 U.S. at 706.

potential for stigmatization, both occurred in 1998.  Plaintiff knew about the Report and her

placement on the Ineligible List in 1998.  Moreover, plaintiff's unsuccessful attempt to schedule

a conference to address the Report in 1998 shows that plaintiff knew at that time that the

defendants' conduct could have a stigmatizing effect and negatively impact her future

employment possibilities.[12]  It is irrelevant that her attempt to meet with the Department in 1998

was unsuccessful; even if the Department violated her due process rights by denying her an

opportunity to clear her name in 1998, her cause of action arose *at that time*, and not six years

later when she once again faced the consequences of being on the Ineligible List.

The decision to terminate plaintiff's employment in 2004 was not a new action based on

defamatory allegations made in 2004; it was simply a recognition of her ineligibility for

employment.  Thus, the SCI investigation in 2004, and the resulting denial of employment, did

not constitute a "continuing violation" or "renewed violation" of plaintiff's liberty interest.  The

events in 2004 were merely the consequence of events that occurred, fully and completely, in

1998.  Plaintiff does not contend that the reason for her removal from employment was false; she

was fired because she was on the Ineligible List.  Regardless of the truth of the findings that led

to her placement on the list, she *was* on the list, and Department officials determined that this

precluded her for indirect as well as direct employment.  Therefore, plaintiff's § 1983 claim

accrued in 1998 and is barred by the three-year statute of limitations.

---

[12] This is not a case in which the potentially stigmatizing information laid dormant for
years, and plaintiff, though aware of the publication of the information, was unaware that it
would ever have a stigmatizing effect on her life.  Instead, according to plaintiff, she actually
suffered the stigmatizing effects of the Report in 1998, which she claims "damaged [her]
standing . . . in [her] community."  Roth, 408 U.S. at 573.  (See Pl. Dep. 72 ("I was the old lady
on the corner looking like an evil person.").)  Thus, the potential for stigma was apparent to
plaintiff from the very beginning.

If the 2004 investigation involved new stigmatizing allegations that were not contained in the Stancik Report, plaintiff could perhaps argue that the investigation created a new cause of action, separate and apart from the 1998 events.  However, the 2004 SCI investigation did not involve any new stigmatizing information not already included in the Stancik Report, and thus can not, in and of itself, give rise to a new cause of action.[13]  (See Def. Exh. P at 1-2.)  The investigation focused on the relationship between New Visions and the Department, and the implications of the Stancik Report on plaintiff's employment by New Visions.  (Id. 2-4; Def. Exh. S (directing the dismissal of plaintiff based on the discovery of the Stancik Report).) Nothing was disclosed in 2004 that was not disclosed to the general public, to plaintiff's full knowledge, in 1998.

The Court is mindful that application of the statute of limitations to plaintiff's § 1983 claim "may very well . . . foreclose[] any remedy for what might have been an actionable injury." BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 616 (2d Cir. 1996) (citation and internal quotation marks omitted).  Unfortunately, such a "harsh" result is sometimes "unavoidable . . . .  Where a plaintiff has failed to comply with [the statutory] requirement, a court may not entertain the suit."  Id. (citation and internal quotation marks

_____

[13] The only new information uncovered by the 2004 SCI investigation is the statement in SCI's April 22, 2004 letter to Chancellor Klein that plaintiff had failed to inform her Florida employer about the Stancik Report.  (Def. Exh. P.)  Plaintiff claims that this statement "suggests that [she] had lied to" her Florida employer.  (Pl. Decl. ¶ 17.)  Regardless of whether it is reasonable to read such an inference into the statement, plaintiff does not assert that the statement in the 2004 letter was false, only that it could be misconstrued.  (Id. ¶ 18.)  In addition, plaintiff's assertion that the statement was misleading is belied by her own admission that the Florida employer actually might not have known about the Stancik Report due to a misunderstanding in her job application.  (Id.)  The stigma-plus test requires plaintiff to allege that the stigmatizing charges were false.  Brandt, 820 F.2d at 43-44, citing Codd v. Velger, 429 U.S. 624, 627 (1977).

omitted).

III.   <u>Supplemental Jurisdiction</u>

Finally, plaintiff claims that, by "acting to provoke New Visions to write its June 9, 2004 letter terminating [plaintiff's] contract" (Compl. ¶ 41), defendants violated § 7803(3) of the New York Civil Practice Law and Rules.  Section 7803(3), a part of Article 78 of the N.Y. C.P.L.R., provides for injunctive relief where a "body or officer" of New York State behaves in an "arbitrary and capricious manner."  N.Y. C.P.L.R. § 7803(3).

Because plaintiff's Article 78 claim is based on state law, the claim may be maintained only through exercise of the Court's supplemental jurisdiction.  28 U.S.C. § 1367.  Dismissal of plaintiff's state law claim is appropriate because she has no surviving federal claims.  See <u>E&L Consulting, Ltd. v. Doman Indus. Ltp.</u>, 472 F.3d 23, 33 (2d Cir. 2006) (affirming district court's "proper" dismissal of plaintiff's remaining state claims following dismissal of plaintiff's federal claims); <u>Giordano v. City of New York</u>, 274 F.3d 740, 754 (2d Cir. 2001) ("[T]he state law claims should be dismissed so that state courts can, if so called upon, decide for themselves whatever questions of state law this case may present.").

Dismissal is particularly appropriate here, because Article 78 proceedings present unique issues of state law.  Assuming an Article 78 claim could ever be properly adjudicated in a federal district court,[14] the Court clearly has discretion under 28 U.S.C. § 1367(c) to decline to hear such

---

[14] Three district courts in this Circuit have recently concluded that Article 78 claims brought in federal court "must be dismissed for lack of subject matter jurisdiction, as New York State has not empowered the federal courts to consider such claims."  <u>Blatch ex rel. Clay v. Hernandez</u>, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005); <u>see also</u> <u>Beckwith v. Erie County Water Auth.</u>, 413 F. Supp. 2d 214, 226 (W.D.N.Y. 2006); <u>Cartagena v. City of New York</u>, 257 F. Supp.

a claim.  Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 309 (2d Cir. 2004).  A

court may decline to exercise supplemental jurisdiction for "compelling reasons."  28 U.S.C. §

1367(c), (c)(4).  "The very nature of an Article 78 proceeding presents such compelling

reasons."  Morningside Supermarket Corp. v. N.Y. State Dep't of Health, 432 F. Supp. 2d 334,

346 (S.D.N.Y. 2006).

"An Article 78 proceeding is a novel and special creation of state law, and differs

markedly from the typical civil action brought in [federal district court] in a number of ways."

Lucchese v. Carboni, 22 F. Supp. 2d 256, 258 (S.D.N.Y. 1998).  As a "purely state procedural

remedy," Camacho v. Brandon, 56 F. Supp. 2d 370, 380 (S.D.N.Y. 1999), an Article 78

proceeding is "designed to accommodate to the state court system."  Herrmann v. Brooklyn Law

Sch., 432 F.Supp. 236, 240 (E.D.N.Y. 1976).  When a federal district court exercises

supplemental jurisdiction over Article 78 claims, the court "usurp[s] the statutory authority

bestowed upon the New York state courts."  Adler v. Pataki, 204 F. Supp. 2d 384, 396

(N.D.N.Y. 2002) (citation and internal quotation marks omitted).  Thus, "federal courts are loath

to exercise jurisdiction over Article 78 claims."  Birmingham v. Ogden, 70 F. Supp. 2d 353, 372

(S.D.N.Y. 1999).  See also Morningside Supermarket, 432 F. Supp. 2d at 346-47 (locating

"[o]nly two cases" in which a federal court accepted supplemental jurisdiction over an Article 78

claim).

---

2d 708, 710 (S.D.N.Y. 2003).  However, for the purposes of this case, the Court assumes without
deciding that there are circumstances under which a federal district court may hear Article 78
claims.  See, e.g., Cartegena v. City of New York, 345 F. Supp. 2d 414, 426 (S.D.N.Y. 2004)
(accepting supplemental jurisdiction after defendants withdrew their jurisdictional objection and
"unequivocally agreed, in the unusual circumstances of th[e] case, to the submission of the
Article 78 claim" to the federal court, but not denying the propriety of the court's earlier ruling).

18

brief the issue beyond the conclusory statement that the Court should "invoke its supplemental jurisdiction to hear claims arising under state law." (Compl. ¶ 5.)  Therefore, plaintiff's Article 78 claim is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted. Plaintiff's cross-motion for partial summary judgment is denied.


SO ORDERED.

Dated: New York, New York
       March 5, 2007

GERARD E. LYNCH
United States District Judge

19